May it please the court, Ina Lipkin, on behalf of the petitioners. This matter is before the court once again regarding an immigration matter. The petitioner was a politically active Sikh in India who claimed persecution on account of his political opinion by oppositional parties and the police who arrested him three times. The immigration court following remand once again found him incredible and that decision was affirmed by the board. The petitioner contends that the board erred in affirming the IJ's incredibility finding because the basis for or impugn his well-founded fear of persecution. The petitioner established that the sole reason he was targeted for harm by the Indian police was due to his pro-Shiromani Akali Dalman participation. Had he not participated in sit-ins and protests, the police would not have formed an anti-national seditionist opinion against him. Judge Smith, may I ask this question? As you know under the Real ID Act, the demeanor of the witness is one of the characteristics that the IJ can say. Overall, the IJ felt that Singh's demeanor and his wife's testimony were really evasive in the case of the petitioner, non-responsive, evasive and self-contradictory when he was questioned about inconsistencies in his testimony. His wife's testimony about the visit of the police when and where and so on was inconsistent with that of her husband in several instances, kept looking at him for direction if you will, and the documentary evidence submitted by the petitioner didn't rehabilitate his credibility. So again, it's a long question, but bottom line is given those, as I understand, facts, isn't that enough under the Real ID Act to sustain the IJ's non-credibility determination? The Real ID Act does permit the judge to make an adverse credibility finding on inconsistencies and a failure of the documentary evidence. Petitioner doesn't dispute that. However, the inconsistencies and deficiencies noted by the IJ were not with basis. His demeanor findings were very vague. What he really based his decision on was alleged omissions by the petitioner during his asylum interview regarding his brother's harm. However, how do you get that? I don't, you missed something. I missed something with you. Is there a finding by the board that he did not consider these credibility findings as he looked at him and made a determination? Is something else was on his mind? I don't know how you made that skip that all of a sudden you left Judge Smith's question, which I was interested in your answer, and went to something else that I didn't understand as your belief that it was the basis of the determination. Could you explain that for me, please? Sure. One of the IJ's grounds for an alleged inconsistency was not just between his statements and his written declaration. He pointed to the petitioner's prior testimony before the asylum officer and he found faults in the petitioner's omission of problems his brother, Bell Winder, also suffered in India on account of his political activities. So the petitioner did explain that at the time of that interview, he did not know that his brother had suffered harm and he only learned of that later in time. However, the judge relied on that as part of his determination and credibility. He also found an inconsistency between two Akali Dalman letters in that an initial letter did not contain the dates of harm he had and was not dated and the second letter cured those deficiencies. But the IJ did not explain why curing the deficiencies was in itself deficient and instead made a blanket negative demeanor finding. So on that basis, substantial evidence doesn't support the adverse credibility finding. Let me follow up with that because I mentioned the Real ID Act before. Let's credit for a moment your concept of some of the findings were really de minimis but the reality is that the demeanor findings alone under the Real ID Act are sufficient for the IJ to find that your plan was not credible, isn't it? It would be if the record supported it but the petitioner contends it does not. Wait a minute, wait a minute, wait a minute. Demeanor, as I'm sure you're a very experienced lawyer, demeanor is what you see for the most part. You see the movement of the eyes, the way of the mouth, the view of everybody else. You can't see that in the record. The IJ was there. The IJ saw your plan and made this determination. I'm puzzled as to what you're referring to that would overcome the IJ's demeanor determination. I get your point about the documents. I get your point about the brother but with respect to the demeanor evidence, what is it you're referring to that contradicts that finding? Your Honor, I will use your own explanation, which I don't disagree with, regarding what would constitute a demeanor finding regarding a person's facial expression or hesitancy or other verbal cues but the judge did not refer to any of those items. He made no mention of changes in the petitioner's visage or his expressions. He again used the demeanor finding to buttress his inconsistency finding. He simply said that the petitioner was very vaguely quote non-responsive, quote evasive, quote self-contradictory. Self-contradictory has nothing to do with one's outer appearance or facial expressions that constitute demeanor. So that is why. Counsel, with respect, admittedly, that's the wording that the IJ used but if I understand it correctly, when your client spoke on direct, he was forceful. He had a statement to make. He made it cross-examined. That's when these things occur. The evasiveness, the non-responsiveness and the like. What more did he have to say? Did he have to say that the left side of his face went down and his eyes went to the side? What does he have to say in connection with demeanor more than he did say? Well, this court has admonished in the past that blanket or generic boilerplate demeanor findings are not sufficient and there's nowhere in this record with due respect that the judge explained what aspect of the petitioner's actual demeanor other than his testimony was problematic. Other than to make a blanket statement that he was quote unquote non-responsive. Do you want to save any time for rebuttal? You don't have to, of course, but would you like to save any rebuttal? Oh, sure. Without being in front of you, I didn't have a little red light. No, I understand that. You got a minute and 22 seconds. So, I'll take it. I'll take it. Very good. Very well. So, let's then hear from the government, Mr. Caroll, I believe. Or is it Caroll? It's Caroll. Thank you, Your Honor. May it please the court. Ira Caroll on behalf of Respondent Acting Attorney General Rosen. We think this comes exactly down to Judge Smith's question. There's a credibility determination based on demeanor, based on evasiveness, non-responsiveness, and self-contradictory testimony. Not just inconsistent with his brother and his wife, but self-contradictory within his own testimony based on demeanor, what the IJ observed in the room, and that is more than sufficient for this court to affirm on that ground alone. We would add that there's nothing in the opening brief from Petitioner that even raises demeanor, self-contradictory, evasiveness, and non-responsiveness. And so, that's part of the reason our brief is so narrow is because the court can affirm on that ground. It hasn't been contested, and we would submit on that. There is more than substantial evidence to support this in the way that the answers came in. And as Judge Smith said, the IJ on cross that there's this evasiveness, non-responsiveness, and that the answers change. And so, to take one example from what my colleague was saying on the other side, when he's talking about his brother and when he knew these allegations that his brother was arrested and beaten, at one point he says, they didn't really tell me much, so I didn't know until he came here in July 2009. Another time he says, they told me a little bit, and I figured out I but I didn't know why. Another time he acknowledges that he understood that his brother was being arrested because of him. He says specifically, my brother never got arrested before I left town. He was allowed to go to and from work without problems. So, his story on that changes internally as does his story on why he didn't tell the asylum officer in March of 2009. At one point, he says, I didn't know yet. At another point, he says, it didn't happen yet. Another point, he says, the asylum officer didn't ask. Another point, he says, well, when the asylum officer asked about family, I didn't think that included my brother because he doesn't live with me. And so, his answers on those things are all over the map substantively. But even when you look at the way he responds, when his answers become self-contradictory, they're less direct, they're much more evasive. It takes several questions to get an answer out of him. And in these instances, you can see the IJ has to jump in and try to help put a finer point on it because of the way the answers are coming in. And we would submit that that reflects what the IJ was seeing in the room and demonstrates that there was a demeanor that showed a lack of credibility. And on that ground alone, the court should affirm it. Mr. Carroll, isn't there a danger that if you just allow an IJ to say, the demeanor showed that you were not telling the truth, that there could be cultural bias, there could be implicit bias, there could be translation issues. And, you know, any trial lawyer knows that you can prepare your client for direct by going over the questions and answers with them beforehand. But cross is a different matter. So it doesn't surprise me that he would be forceful and immediately responsive to his own counsel's questions, but sometimes have difficulty with cross-examination. What about that? But I think and I think that's true in general. But the examples we have here show why this determination is reliable and should be affirmed and is supported by substantial evidence. So to give you one example, at one point on cross, he's asked, why is your dad's name spelled in two different ways in written statements signed by your dad? And he gives these evasive answers. And he ultimately says, well, my dad had an accident and he forgets things. And then he comes back later on redirect and says, actually, my dad spells his name two different ways. That's not the kind of thing that. OK, but is that demeanor or is that inconsistent testimony? Well, part of what the judge to IJ said was a basis for his demeanor finding was self-contradictory testimony. And I think the two go hand in hand. We don't know what his face looked like when he was saying these things about his dad forgetting and how he struggled initially with two different spellings of his dad's name. But it's the same thing on much more material issues, like when he learned that his brother was being abused or allegedly arrested and beaten, when he whether his wife was in the room, when police came in and allegedly verbally abused them in between his arrests on Craw, on direct. My wife was there every time she was verbally abused. He says it expressly on cross. And or after she testifies, she sequestered and she comes in and testifies that she doesn't say anything about being personally verbally abused. She says there were no problems. She talks about him being verbally abused. Then he comes in later and he gives this evasive answer about, well, she wasn't necessarily in the room. She has a And so these kinds of answers that we have here, I think we think give the court more than enough basis, sufficient evidence to affirm the demeanor finding. You know, there is a risk in general on demeanor findings, but the IJ here and BIA explain their bases and there's more than enough in the record to support them. What about the ability to relocate within the country to avoid persecution if we were to find that there were inconsistencies and demeanor finding were not enough? So we didn't brief that issue and I want to be careful, but we, the government does agree with the BIA's analysis there. It followed MZMR to the T. It did everything it was supposed to do, but I do want to acknowledge we didn't brief it. If the court's interested, we'd be happy to submit supplemental briefing. We thought the credibility and demeanor was more than enough to affirm and didn't want to bog the court down with another 50 pages of briefing. Yeah, we have several cases that do both, so I may be mixing yours up with the next one. That's quite all right. And if it's helpful, I'd be happy to address the documents as well. The department's position is that the BIA and IJ were correct that the documents do not rehabilitate the testimony, as Judge Smith said. You know, those documents, for example, they fall into three buckets, the ones that try to retell the story, as the BIA and IJ said. One is the national president of the party who mentions Petitioner, but then doesn't say anything that he's in the party, doesn't say anything about his story. Nothing about arrests, nothing about protests, nothing about beatings. None of that stuff is in there. There's other people's arrests. There's concerns about nuclear war, but nothing about Petitioner and his story. There's the district president who talks about three arrests and helping him get out, and there are the red flags about the date and the lack of reference number. But beyond that, it doesn't, the IJ and BIA didn't limit it to the date and lack of reference number. They talk specifically about the fact that it doesn't give the circumstances of the arrests, and it doesn't say anything about beatings. And your local district president who gave you two versions of the letter, now the first one was submitted the day of a hearing without a date and a reference number, again, red flags as to credibility. But that person should know, if you were arrested at a protest for the party, it's odd that that wouldn't be in the letter that they went out and got to fill a gap in their story on the morning of the second hearing. And so that the BIA and IJ were correct to say that can't be enough to rehabilitate all the inconsistencies and demeanor and evasiveness and non-responsiveness in Petitioner's testimony. And then the third bucket is the letter from the doctor and other family members who were in India where the IJ said he gave them less weight because they weren't present and they weren't able to be cross-examined. And that is something that this court has said is a legitimate thing to do. And this case shows why. Because you have the people who came in, the petitioner and his brother, they submit a written statement before the first hearing. And then when they were cross-examined, that's where the contradictions, the evasiveness, and the demeanor show that they lacked credibility. So if the people who were present who told the story lacked credibility, there's no reason for the IJ to overturn that finding and rehabilitate that finding based on written submissions from people who weren't in the room and didn't get to tell their story and weren't able to be asked questions. If you have no further questions, we would ask the court to refer. Any other questions by my colleagues? I'm fine, thanks. Very well. Okay, then Ms. Lipkin, you have some rebuttal time. Thank you, your honors. I would just say that this court has expressly found that a mere lack of authentication from the preparers of documents is not a legitimate basis or a substantial basis to find a document lacks credibility. The government hasn't explained how the writer of the Circle letter, the Circle president, could himself have been made available for cross-examination. That's true if you're just kidding me with that one instance. But in a way, this case is kind of the death by a thousand cuts. You got lots of inconsistencies that show up, and cumulatively, that's what the government's relying upon. But the burden in this case, as you know, is on your client to show that his evidence compels a different finding. Isn't that correct? It's correct. If the IJ had given a cogent adverse credibility finding, but as argued previously, his demeanor findings lack that kind of explanation as to what elements of the petitioner's demeanor were actually lacking, as we discussed earlier. The inconsistency by the wife regarding the timing of certain police visits in between the lead petitioner's three arrests were, as previously noted, the term de minimis. And I would say that they were de minimis given that she was anxious as her whole future was at stake. Forgive me, you are over time, so let me ask my colleague whether either has additional questions for you. Do either of my colleagues have questions? No, thank you. Very well. We thank counsel. We know that both of you could give us a lot more argument on this, but we thank you for what you've given us and also the briefs. The case just argued of Harbinder Singh versus Rosen is submitted.
judges: Wallace, M. Smith, Lasnik